DECISION
In this wrongful death action, Plaintiffs Thomas J. Long and Sidney DeMello-Long (Plaintiffs) have filed a Motion to Compel a Response to their Fifth Request for Production.[1]
Specifically, they seek Defendant Women and Infants Hospital of Rhode Island (the Hospital) to produce an Occurrence Screen that was prepared after their prematurely-born, six-day old son died while being treated in defendant's Neonatal Intensive Care Unit.[2]
In their request for production, the Plaintiffs sought a "[c]opy of any and all forms completed by any clinician or clinical services, and/or the attending obstetrician/pediatrician, when an autopsy has been requested. This document may be part of the hospital's `Autopsy File.'" In response to this request, the Hospital stated that
 "[a]n Occurrence Screen was prepared in this case by Nurse B. Ottiano referring to an Occurrence Screen date of 8/29/02 and time of 0800-0905. It is hospital policy not to produce these inasmuch as they are made in anticipation of litigation. It is believed that suits are brought many times just when there is an unfortunate outcome without any malpractice."
The plaintiffs contend that this Occurrence Screen is not privileged because, they allege, such reports are prepared routinely and in the ordinary course of business.
The extent of discoverable information is set forth in Super. R. Civ. P. Rule 26(b)(1). It provides in relevant part:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead to the discovery of admissible evidence."
"`Discovery' is one of the working tools of the legal profession. . . . It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." Hickman v. Taylor, 329 U.S. 495 (1947) (Jackson, J., concurring). Accordingly, "modern instruments of discovery serve a useful purpose. . . . They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter Gamble Co., 356 U.S. 677, 682 (1958). It is axiomatic that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Id. at 507. As a result, "the attorney-client privilege `must be narrowly construed because it limits the full disclosure of the truth.'"Mortgage Guar. Title Co. v. Cunha, 745 A.2d 156, 159-60 (R.I. 2000) (quoting Callahan v. Nystedt, 641 A.2d 58, 61 (R.I. 1994)).
A party resisting production bears the burden of establishing lack of relevancy or undue burden. See Oleson v. Kmart Corp.,175 F.R.D. 560, 565 (D.Kan. 1997). Accordingly, that party "must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." St. Paul Reinsurance Co. v. Commer.Fin. Corp., 198 F.R.D. 508, 512 (N.D. Ia. 2000). Furthermore, "[a] party who withholds information that is `otherwise discoverable' by claiming that it is privileged or subject to protection as trial preparation material is required under Super. R. Civ. P. Rule 26(b)(5) to make this claim expressly and to describe `the nature' of the documents not produced or disclosed in a manner that will enable other parties to assess the applicability of the privilege or protection that is claimed."D'Amario v. State, 686 A.2d 82, 86, n. 11 (R.I. 1996).
The issue before this Court is whether the Occurrence Screen that was prepared after Sonny T. Long's death is privileged and, as such, is not discoverable. This Court does not believe that to be the case.
"In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be identified to be confidential."State ex rel. United Hosp. Ctr. v. Bedell, 484 S.E.2d 199, 208
(W.Va. 1997) (holding that "the hospital failed to carry its burden of establishing the attorney-client privilege, in all its elements, with regard to either the incident or investigation report[,]" because it did not demonstrate that the nurse who prepared an incident report contemplated an attorney-client relationship did or would exist when she prepared and then handed it over to an attorney, and also failed to establish that the nurse sought any legal advice from that attorney with regard to the report). Similarly, in Columbia/HCA Healthcare Corp. v. TheEighth Judicial District Court of Nevada, 936 P.2d 844, 848
(Nev. 1977), the Supreme Court of Nevada rejected an assertion that occurrence reports are prepared in anticipation of litigation, holding that the pre-printed forms are prepared in the ordinary course of business.
This Court concludes that the Hospital did not carry its burden of establishing that the Occurrence Screen prepared in this case is protected by attorney-client privilege; consequently, it is subject to discovery.[3]
For the foregoing reasons, the Hospital is ordered to deliver the Occurrence Screen to Plaintiffs' attorney forthwith.
[1] The plaintiffs are suing the Defendants individually and as parents, next friends and legal beneficiaries of their deceased son, Sonny T. Long.
[2] The Plaintiffs also sought an interrogatory from the Hospital explaining why it did not fill out a "[f]orm to be filled in regarding various information about the decedent and mother." That request was granted by this Court at the hearing on the motion.
[3] Counsel for the Hospital's assertion that "we only fill this form out for unusual circumstances not what we would see in the normal course of business . . ." is unavailing. Any incident that occurs may, or may not be, an unusual circumstance. The pre-printed Occurrence Screen contemplates incidents that result in no injury whatsoever. In such situations, it is unlikely that any litigation would ensue; yet, an Occurrence Screen still would be prepared. This clearly undermines the Hospital's assertion that Occurrence Screens are prepared in contemplation of litigation.